UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHAEL FOLEY,

Plaintiff,

v.

GEORGINA STUART, *et al.*,

Defendants.

Case No. 2:20-cv-01874-ART-BNW

ORDER

Pro se plaintiff Michael Foley ("Plaintiff") filed this action *in forma pauperis* under 42 U.S.C. § 1983 alleging that actions taken by Defendants in 2008 when Plaintiff was eight years old amounted to warrantless seizures in violation of his Fourth and Fourteenth Amendment rights. Plaintiff also alleges that actions taken by Defendants violated his right to familial association with his father and other family members. Now pending before the Court are five motions: 1) Defendant James Childs' Motion for Summary Judgment (ECF No. 98); 2) Defendant James Childs' Motion to Strike Complaint (ECF No. 105); Defendant Jeffery Pont's Motion for Summary Judgment (ECF No. 109); Defendants Anita Flores-Yanez, Lisa Reese, Alexa Rodriguez, and Georgina Stuart's ("DFS Defendants") Motion for Summary Judgment (ECF No. 138); and 5) DFS Defendants' Motion to Strike Complaint (ECF No. 139). For the reasons set forth in this order, the Court will grant each of the motions for summary judgment (ECF Nos. 98, 109, 138) and deny each of the motions to strike as moot (ECF Nos. 105, 139).

**I.     BACKGROUND**

The only two incidents at issue in this litigation are: 1) an alleged search and seizure that occurred on October 18, 2008, at the Mandalay Bay Hotel when Clark County DFS employee Georgina Stuart allegedly interviewed and examined the Plaintiff; and 2) an alleged search and seizure that occurred when the Plaintiff was temporarily taken into protective custody by Department of Family Services

1

1  ("DFS") agents following the service of a protective order obtained by Plaintiff's
2  father on Plaintiff's mother Patricia Foley on October 28, 2008. (*See* ECF No. 5 at
3  11-12, ECF No. 6 at 7-18, ECF No. 7.) Plaintiff was a minor child at the time of
4  both incidents.

5        On October 18, 2008, Defendant Jeffery Pont called the police, who in
6  turned called DFS, because he observed bruises on the arms of Plaintiff's siblings
7  and suspected abuse by Plaintiff's father. (ECF No. 109-1.) Defendant Georgina
8  Stuart arrived at the hotel room where Defendant Pont, Plaintiff's siblings, and
9  Plaintiff's mother were and interviewed both of Plaintiff's siblings with Plaintiff's
10 mother's consent. (*Id.*; ECF No. 98-1 at 3-4, 9.) Eventually, Plaintiff's father
11 brought Plaintiff to the hotel room, where Defendant Stuart interviewed him with
12 his mother's consent. (*Id.*) Defendant Stuart also inspected the children, looking
13 for bruises. (*Id.*)

14       On October 28, 2008, Plaintiff and his siblings were with their mother when
15 they were pulled over by a law enforcement officer. (ECF No. 98-1 at 6.) Because
16 Plaintiff's mother had filed a protection order against Plaintiff's father, and
17 Plaintiff's father had done the same, the conflicting restraining orders required
18 DFS to take custody of the children for the night. Plaintiff's mother consented
19 and the children were taken to Child Haven. (*Id.* at 7.)

20       Ms. Foley, Plaintiff's biological mother and one of his legal guardians during
21 the events giving rise to this action, testified that she was present for and
22 consented to the interview and examination of Plaintiff on October 18, 2008 by
23 Defendant Georgina Stuart. (ECF No. 98-1 at 3-4, 9.) Ms. Foley also testified that
24 she was present and consented to Plaintiff being temporarily taken into protective
25 custody by DFS Defendants on October 28, 2008. (*Id.* at 7.)

26       In a declaration, Defendant Jeffery Pont stated that he is Plaintiff's uncle,
27 that he initially called DFS on October 18, 2008, that Ms. Foley consented to
28 Defendant Stuart's interview and inspection of Plaintiff on October 18, 2008, and

that he never bribed Defendant Stuart to prompt an investigation into Plaintiff's father or to obtain custody over Plaintiff. (ECF No. 109-1.)

After Plaintiff's complaint was screened (ECF Nos. 5, 7) and the remaining claims survived a motion to dismiss (ECF No. 104), Defendant James Childs moved for summary judgment (ECF No. 98) and to strike Plaintiff's complaint (ECF No. 105). Plaintiff responded to each of these motions (ECF Nos. 108, 122), and Defendant Childs replied (ECF Nos. 112, 125).

Defendant Jeffery Pont later moved for summary judgment (ECF No. 109). Plaintiff responded (ECF No. 124), and Defendant Pont replied (ECF No. 129).

Finally, the DFS Defendants moved for summary judgment (ECF No. 138) and to strike Plaintiff's complaint. (ECF No. 139). Plaintiff responded to each of these motions (ECF Nos. 143, 144), and the DFS Defendants replied (ECF Nos. 145, 146). In addition, Defendant Pont joined with the DFS Defendants in their Motion to Strike (ECF No. 141).

**II.    DISCUSSION**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To

defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). The Court views the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

The motions for summary judgment in this case can be boiled down to two arguments. First, Defendant Childs and the DFS Defendants argue that they are entitled to qualified immunity for interviewing Plaintiff, examining Plaintiff, and placing Plaintiff in protective custody with the consent of Plaintiff's mother. Second, Defendant Pont argues that he was not acting under color of state law, so Plaintiff's 42 U.S.C. § 1983 claim fails as a matter of law. The Court will address each of these arguments in turn before resolving the motions to strike Plaintiff's complaint.

**A. Qualified Immunity Applies to the Government Defendants**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). A law is clearly established for the purposes of qualified immunity analysis "if every reasonable official would have understood that what he is doing violates that right." *Cates v. Stroud*, 976 F.3d 972, 978 (9th Cir. 2020) (internal quotation marks omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 577 U.S. at 12. The Court is satisfied that the government defendants in this case did not violate Plaintiff's clearly established statutory or constitutional rights.

First, the encounter between Defendant Stuart and Plaintiff on October 18, 2008 did not violate any of Plaintiff's clearly established rights. "[T]he 'Constitution assures parents that, in the absence of parental consent, [physical

examinations] of their child may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined . . . that grounds for such an examination exist . . . .'" *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) (quoting *van Emrik v. Chemung Cnty. Dep't of Soc. Servs.*, 911 F.2d 863, 867 (2d Cir. 1990)). Clear Ninth Circuit precedent in place at the time of the October 18, 2008 incident provides that examinations and interviews of children for investigative purposes may take place with parental consent.

The government defendants have pointed to deposition testimony from the Plaintiff's mother indicating that she consented to the interview and examination of Plaintiff on October 18, 2008. Plaintiff has not rebutted this evidence. Neither Plaintiff, who does not remember the events, nor Plaintiff's father, who was not present in the room during the examination and interview, can testify to whether or not Plaintiff's mother consented to the interview and examination. Plaintiff argues that because DFS did not explicitly mention that Plaintiff's mother consented to the interview and examination in its report triable issues of fact exist on this issue. (ECF No. 124-1.) The Court disagrees. There is no genuine dispute on whether Plaintiff's mother consented to the interview and examination based on anything in the record. A reasonable juror could not find in Plaintiff's favor. Therefore, the Court grants summary judgment to the government Defendants as it relates to the October 18, 2008 encounter based on qualified immunity.

Turning to the October 28, 2008 incident when Plaintiff was taken into protective custody by the government Defendants, Plaintiff argues 1) that his mother did not actually consent to him being placed into DFS custody because she was crying during the encounter; 2) that his mother was legally prohibited from consenting to Plaintiff being placed in protective custody based on the terms of a Temporary Protective Order ("TPO"); and 3) that Plaintiff's rights were violated because his father did not consent to him being placed into protective custody.

5

1    All of these arguments fail.

2    First, Plaintiff's argument that his mother's tears indicate a lack of consent does not create a genuine issue for trial. Plaintiff's mother testified at her deposition that she consented to her children being placed in protective custody on October 28, 2008. Even assuming that she was crying, this fact alone does not satisfy Plaintiff's burden to avoid summary judgment.

    Second, nothing in the TPO prevents Plaintiff's mother from exercising her parental rights and consenting to her children being placed in protective custody. (ECF No. 98-2.)

    Third, Plaintiff cites no case law supporting his argument that a clearly established right to consent by both parents to his placement in protective custody existed on October 28, 2008. A non-consenting parent does have rights in such a situation. "[I]nterfering with a child's physical custody can violate the rights of a parent with shared legal custody, even if that parent has no physical custody." *James v. Rowlands*, 606 F.3d 646, 654–55 (9th Cir. 2010) (citing *Burke v. Cnty. of Alameda*, 586 F.3d 725 (9th Cir. 2009)). In *James*, the court considered a situation where "CPS officials encourage and facilitate a temporary transfer of a child's physical custody pursuant to a voluntary agreement with one parent." *Id.* at 655. In such a situation, the court recognized a *parental* right to "notice of such a change" so that the non-consenting parent's "right to participate in his child's care and management" is not interfered with. *Id.*

    This case mirrors the facts of *James*, and there is no evidence that Plaintiff's father was not notified of the change in custody or that he was unable to participate in Plaintiff's care and management. In fact, Plaintiff's father was present when the children were taken into protective custody and appeared at a hearing the next day to determine the children's custody status moving forward. (ECF No. 58 at 25-26.) Plaintiff's father's rights were therefore not violated by the government Defendants in this case.

     More importantly, there is neither evidence in the record nor citations to Ninth Circuit precedent clearly establishing Plaintiff's right to have both parents consent to his placement into protective custody. The Court therefore finds that the government Defendants reasonably relied on Plaintiff's mother's consent to his placement in protective custody and are entitled to qualified immunity for their actions on October 28, 2008 and grants summary judgment to the government Defendants.

### B. Defendant Pont Was Not Acting Under Color of State Law

     In his Complaint, Plaintiff alleges that Defendant Pont was acting under color of state law by conspiring with and bribing the DFS agent—Defendant Stuart—to investigate his father and remove Plaintiff from his father's custody.

     "Although § 1983 makes liable only those who act 'under color of' state law, 'even a private entity can, in certain circumstances, be subject to liability under section 1983.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (quoting *Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 954 (9th Cir. 2008) (en banc)). "Specifically, a plaintiff must show that 'the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). While the Supreme Court has articulated several tests for determining whether a private party's actions amount to state action, only the "joint action test" could plausibly apply to this case. *See id.* at 1140.

     "The joint action test asks whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* (internal quotation marks omitted). "This requirement can be satisfied either by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id.* (internal quotation marks omitted).

     Here, Plaintiff has alleged a conspiracy between Defendant Pont and

7

government Defendants, accusing Defendant Pont of bribing Defendant Stuart to investigate his father and remove Plaintiff from his father's custody. But Plaintiff's bald allegations, unsupported by any facts from the record, do not create a genuine issue of material fact for trial. Moreover, they are rebutted by deposition testimony from Defendant Pont. Plaintiff has therefore not met his burden of providing evidence that Defendant Pont, a private party, is a state actor. The Court therefore grants summary judgment to Defendant Pont.

### C. The Motions to Strike Complaint Are Moot

Because the Court is granting summary judgment on all claims as to all Defendants, the pending motions to strike Plaintiff's complaint are denied as moot.

## III. CONCLUSION

It is therefore ordered that the pending motions for summary judgment (ECF Nos. 98, 109, 138) are GRANTED.

It is further ordered that the pending motions to strike are denied as moot (ECF Nos. 105, 139).

The Clerk of Court is directed to enter judgment in favor of all Defendants.

DATED THIS 27th day of March 2024.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE